**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| ENTERGY ARKANSAS, INC. | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | NO: 4:11CV00655 SWW |
| ARKANSAS PUBLIC SERVICE | * | |
| COMMISSION; ET AL. | * | |
| | * | |
| Defendants | | |

**ORDER**

Plaintiff Entergy Arkansas, Inc. ("Entergy Arkansas") brings this action against the Arkansas Public Service Commission ("APSC") and its commissioners in their official capacities, seeking a declaratory judgment that an APSC decision denying Entergy Arkansas's application for approval of a rate surcharge is preempted by federal law. Before the Court is APSC's motion to dismiss for lack of subject matter jurisdiction (docket entries #4, #5), Entergy Arkansas's response in opposition (docket entries #14, #16), and APSC's reply (docket entry #15). After careful consideration, and for reasons that follow, the Court finds that Entergy Arkansas lacks standing to bring this case, which deprives the Court of subject matter jurisdiction. The Court further finds that the complaint for declaratory relief is not ripe for judicial adjudication at this time.[1] Accordingly, the motion to dismiss is granted and this case is

---

[1] Although the parties have not explicitly addressed the issue of ripeness, the Court finds that given the close relationship between standing and ripeness, it is fair to consider the issue without further briefing. *See Johnson v. Missouri*, 142 F.3d 1087, 1090 n. 4 (8th Cir.1998)(noting that although "standing and ripeness are technically different doctrines, they are closely related in that each focuses on 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'").

dismissed without prejudice.

## I.

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure may challenge the factual truthfulness or the facial sufficiency of the plaintiff's jurisdictional allegations. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In this case, APSC makes a facial attack to jurisdiction, arguing that the complaint fails to present an actual case or controversy as required by Article III of the United States Constitution. Accordingly, the Court limits its review to the face of complaint, similar to the review conducted under Rule 12(b)(6). All factual allegations in the complaint, as opposed to conclusory allegations of law, are assumed to be true. *See McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997).

## II.

<u>The Federal Power Act and the Federal Energy Regulatory Commission</u>

The facts giving rise to this case involve Federal Energy Regulatory Commission ("FERC" or "Commission") proceedings that are ongoing. Pursuant to the Federal Power Act ("FPA"), FERC regulates wholesale sales of electricity in interstate commerce. FERC's exclusive jurisdiction applies not only to wholesale rates but also to power allocations among integrated public utilities that affect wholesale rates. *See Mississippi Power & Light Co. v. Mississippi ex rel. Moore,* 487 U.S. 354, 371-372, 108 S.Ct. 2428, 2439 (1988)(citing *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966, 106 S.Ct. 2349, 2356-2357 (1986)). Section 206(a) of the FPA empowers FERC, on its own motion or pursuant to a complaint, to review and change any wholesale rate that it finds unjust, unreasonable, unduly

discriminatory, or preferential. *See* 16 U.S.C. § 824e(a). In the event that FERC finds a rate to be unjust or unreasonable, it must remedy such a rate by "determin[ing] the just and reasonable rate, charge, [or] classification . . . to be thereafter observed and in force, and shall fix the same by order." *Id*.

As a corollary to the filed-rate doctrine--a judicially created rule that exists to preserve an agency's primary jurisdiction over the reasonableness of rates-- FERC may not retroactively alter a filed wholesale rate to compensate for prior over- or under-payments. *See Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930 (1981)(citation omitted). However, the FPA provides a narrow exception to the limitations imposed by the filed-rate doctrine and rule against retroactive ratemaking, under which FERC can order the refund of certain past rate payments. *See Exxon Mobil Corp. v. F.E.R.C.,* 571 F.3d 1208, 1211-1212 (D.C. Cir. 2009). Specifically,

§ 206(b) of the FPA permits FERC, when ordering prospective relief under § 206(a), to order "refunds of any amounts paid" in excess of the just and reasonable rate during a "statutorily defined period." *See* 16 U.S.C. § 824e(b). The "statutorily-defined" refund period begins, at the latest, five months after the filing of a complaint, and it ends fifteen months thereafter.[2]

Finally, § 206(c) of the FPA, codified at 16 U.S.C. § 824e(c), curtails FERC's authority

---

[2]Under 16 U.S.C. § 824e(b), FERC must establish a refund effective date. In the case of a proceeding instituted on a complaint, the effective refund date shall be no earlier than the filing date of the complaint and no later than five months after the filing of the complaint. In the case of a proceeding instituted by FERC, the refund effective date shall be no earlier than the date of the publication of FERC's notice to institute the proceeding and no later than five months after the publication date. At the conclusion of a proceeding, the Commission may order refunds, for the period subsequent to the refund effective date through a date fifteen months after the effective refund date.

to order refunds by prohibiting the Commission from ordering one subsidiary of a holding company to refund monies to a sister subsidiary unless the Commission determines that the holding company will not experience any reduction of revenue because of the payor subsidiary's "inability ... to recover such increase in costs" from its ratepayers. *See* 16 U.S.C. § 824e(c).

Ongoing Proceedings

Plaintiff Entergy Arkansas is one of five public utilities ( "Operating Companies") owned by Entergy Corporation ("Entergy") that generate and sell electricity to customers in Arkansas, Louisiana, Mississippi, and Texas. In 1982, the Operating Companies entered an agreement ("System Agreement") that allocates certain costs among the Operating Companies in proportion to the load each places on Entergy's electric system at the time of peak monthly demand. The resulting cost allocated to each Operating Company is referred to as a responsibility ratio.

The events giving rise to this action began in 1995, when the Louisiana Public Service Commission ("LPSC") filed a complaint with FERC, claiming that the System Agreement formula for determining responsibility ratios was unjust and unreasonable because it included "interruptible load," which refers to electricity sold under a contract that allows the seller to interrupt the electricity supplied when capacity is low. LPSC's complaint initiated a protracted litigation, summarized below, that continues to this day.

- On August 5, 1996, FERC issued an order dismissing LPSC's complaint, finding among other things that interruptible service was properly included in the System Agreement. *See La. Pub. Serv. Comm'n v. Entergy Corp.*, 76 F.E.R.C. ¶ 61,168 (1996). LPSC filed a petition for judicial review with the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit").[3]

---

[3]The FPA provides that a party aggrieved by an order issued by FERC may file an application for a rehearing, and within sixty days after FERC's ruling on the application, the

- On August 6, 1999, the D.C. Circuit granted LPSC's petition and vacated FERC's order of dismissal on the ground that FERC failed to state an adequate explanation for departing from its own precedent.[4] *See Louisiana Public Service Com'n v. F.E.R.C.,* 184 F.3d 892 (D.C. Cir. 1999).

- On remand, by order issued March 8, 2004, FERC determined that it was unjust or unreasonable to include interruptible load in the System Agreement formula for allocating capacity costs, and it ordered Entergy to phase interruptible load out of the formula. *See La. Pub. Serv. Comm'n v. Entergy Corp.*, 106 F.E.R.C. ¶ 61,228 (2004).

    However, the Commission refused LPSC's request for an order that the Operating Companies that benefitted from the inclusion of interruptible load make refund payments to the Operating Companies that were burdened by the inclusion. At oral argument, counsel for FERC noted that a state commission regulating retail electric rates might not permit a utility to pass the cost of refunds through to retail customers because the retroactive nature of a refund would conflict with the state's filed rate doctrine. Arkansas's filed rate doctrine, for example, allows only prospective recovery of costs, and it forbids a regulated utility from charging retail rates for its services other than those filed with the APSC. *See Cullum v. Seagull Mid-South, Inc*., 322 Ark. 190, 197-198, 907 S.W.2d 741, 744-45 (1995).

    In denying the request for refunds, FERC stated that it could not be certain that Operating Companies would be permitted by state regulators to recover, at retail, the revenue needed to pay refunds, and thus FERC could not find, as required under § 206(c), that Entergy would not experience any reductions in revenue as a result of the refunds.

- LPSC petitioned for judicial review, and the D.C. Circuit remanded for a more "considered determination" regarding the requested refunds. *See La. Pub. Serv. Comm'n v. Entergy Corp. v. F.E.R.C.,* 482 F.3d 510 (D.C. Cir. 2007). The Court of Appeals questioned why the filed rate doctrine would not be satisfied, "considering that all parties were on notice as of the filing of Louisiana's complaint in 1995 that Entergy's calculation . . . might be held unjust or

---

party may file a petition for judicial review in the United States Court of Appeals for the District of Columbia Circuit. *See* 16 U.S.C. § 825*l*(a)-(b).

[4]In 1981, FERC held that the ability to interrupt service to a wholesale customer prevents the imposition of peak demand costs. *See Re Kentucky Utilities Co*, 15 FERC ¶ 61,002, 61,004 (1981).

unreasonable." *Id*. at 520.   The Court of Appeals also noted that FERC failed to explain why, under the Supremacy Clause, a rate increase ordered by FERC may be recovered through retail rates but a refund ordered by FERC may not.

- On remand, without making additional findings, FERC issued an order on September 20, 2007 that directed Entergy to make refunds associated with the fifteen-month period commencing with the refund effective date, and to file a refund report. *See La. Pub. Serv. Comm'n v. Entergy Corp. v. F.E.R.C.*, 120 F.E.R.C. ¶ 61241 (2007).

- Entergy and state regulators, including APSC, filed a petition for judicial review. While that petition was pending, Entergy went forward with the FERC-ordered refunds "through a revision to the September 2008 Intra-System Bill pursuant to the System Agreement."[5]  Compl., ¶ 23.

- On June 29, 2009, the D.C. Circuit granted FERC's motion to hold the petition for judicial review in abeyance and for voluntary remand to permit FERC to give further consideration to its order mandating refunds.

- On August 13, 2010, FERC issued an order holding that § 206(c) did not bar refunds related to the inclusion of interruptible load in the System Agreement formula for allocating capacity costs. *See La. Pub. Serv. Comm'n v. Entergy Corp. v. F.E.R.C.,* 132  F.E.R.C. ¶ 61133 (2010).  In its order, FERC repeated observations made by the D.C. Circuit–that FERC failed to explain why the requirements of the filed rate doctrine would not be satisfied and why, under the Supremacy Clause, a state regulatory commission would not be required to permit a regulated utility to recover  FERC-ordered refund costs through retail rates. FERC concluded that the "filed-rate doctrine would not trap costs here" and that Entergy's assertion that costs might be trapped was "largely speculative." *Id*. at 61650.  FERC further found that, pursuant to its discretionary remedial authority, refunds would be appropriate.

- Entergy and APSC filed requests for rehearing with FERC.  On November 12, 2010, while requests for rehearing were pending, Entergy Arkansas filed an application with APSC, seeking approval of a retail surcharge that would permit it to recover the cost of FERC-ordered refunds from retail customers.  In support of its  application, Entergy Arkansas argued that a surcharge to retail customers was necessary in order to avoid  "trapping" of FERC-ordered wholesale costs, in

---

[5]APSC describes the refund payment process as follows: "To pay for these refunds, . . . Operating Companies, including [Entergy Arkansas] would be charged additional amounts, via Entergy's Intra-System Bill, over and above what they had paid [during the fifteen-month refund period] in 1995-96." Docket entry #5, at 2 n.1.

6

  violation of the Supremacy Clause.  *See* Compl., Ex. B, ¶ 27.  Such "cost trapping" at the wholesale level occurs when a state exercises "jurisdiction over retail sales to prevent the wholesaler-as-seller from recovering the costs of paying the FERC-approved rate." *Nantahala Power and Light Co. v. Thornburg,* 476 U.S. 953, 970, 106 S.Ct. 2349, 2358 - 2359 (1986).

- On June 2, 2011, the APSC denied Entergy Arkansas's application on the ground that passing refund costs through to ratepayers violates Arkansas's filed-rate doctrine, which prohibits a utility from charging retail rates other than those filed with the regulatory authority and prohibits retroactive ratemaking. *See In re Application of Entergy Arkansas, Inc. for Approval of a Rider to Recover Certain Charges Arising from FERC Opinion Nos. 468 and 468-A and Related Orders*, No. 10-096-TF (Order No. 2), 2011 WL 3675199 (Ark. P.S.C. June 2, 2011). Additionally, the APSC concluded that it was not required to approve Entergy Arkansas's proposed rate schedule as a matter of federal preemption through the Supremacy Clause.   The APSC reasoned that in enacting § 206(c), Congress "explicitly recognized the right of retail ratemakers to deny recovery of refund costs due to the requirement of the rule against retroactive ratemaking." *Id*. at 11.

- On June 9, 2011, FERC denied a rehearing with respect to its determination that § 206(c) did not bar refunds, but it granted rehearing on the issue of whether the refunds should be ordered.  See *La. Pub. Serv. Comm'n v. Entergy Corp*., 135 FERC ¶ 61218 (2011).  FERC reaffirmed that it had authority to grant the refunds, but it determined that the better course was to invoke its equitable discretion to deny them.   The LPSC petitioned FERC for a rehearing.

- In light of FERC's decision to rescind its previous order mandating refunds, Entergy reversed its previous revision to the Intra-System Bill, which effectively cancelled the refunds.  *See* Complaint, ¶ 36.

- On July 1, 2011, Entergy Arkansas petitioned the APSC for rehearing.  By order issued  July 29, 2011, the APSC denied Entergy Arkansas's petition, again finding that the proposed retail surcharge would violate Arkansas's rule against retroactive ratemaking.  *See In re Application of Entergy Arkansas, Inc. for Approval of a Rider to Recover Certain Charges Arising from FERC Opinion Nos. 468 and 468-A and Related Orders*, No. 10-096-TF (Order No. 3), 2011 WL 3676805 (Ark. P.S.C. July 29, 2011).

- On October 6, 2011, in response to the LPSC's petition for rehearing, FERC entered an order establishing a paper hearing on the issue of whether the Commission erred in invoking its equitable discretion to deny refunds.  *See La. Pub. Serv. Comm'n v. Entergy Corp*., 137 FERC ¶ 61018 (2011).  Entergy Arkansas reports that the most recent filing in the FERC proceeding was filed in December 2011, and the refund issue remains pending.

**III**.

On August 26, 2011, before FERC initiated a paper hearing on the issue of whether it erred in exercising discretion to deny refunds, Entergy Arkansas filed this action seeking a declaratory judgment that the APSC's rejection of federal preemption is "manifestly erroneous" and that APSC should approve Entergy's application "in order to dispel the cloud of uncertainty and insecurity." Complaint, ¶ 40.

Entergy Arkansas alleges that "there exists an actual and present controversy between the parties concerning whether the APSC can trap FERC-approved costs allocated under the System Agreement . . . . " Complaint, ¶ 40. According to Entergy Arkansas, the controversy "places [it] under a cloud of uncertainty and insecurity as to whether a potential multi-million dollar liability may be recovered in rates, as well as uncertainty regarding the very same issue in any future refund order issued by . . . FERC." *Id*.

In support of its motion to dismiss, APSC argues that Entergy Arkansas fails to present an actual controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a), as required under Article III.

The judicial power of the federal courts is restricted by Article III of the Constitution to cases and controversies, and the controversy requirement of the Declaratory Judgment Act[6] is synonymous with that of Article III.  *See Carson v. Pierce*, 719 F.2d 931, 933 (8th Cir.

---

[6]The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

1983)(citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227. 239-40, 57 S. Ct. 461 (1937)).  In general, an actual controversy is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).  "To satisfy the case or controversy requirement of Article III, which is the irreducible constitutional minimum of standing, a plaintiff must, generally speaking, demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154 (1997)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 2136 (1992)).

An injury-in-fact is a harm that is concrete and particularized and actual or imminent, not conjectural or hypothetical.  *See Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136.  The plaintiff must show that he or she "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged ... conduct and [that] the injury or threat of injury [is] both real and immediate ...." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660(1983)(internal quotations omitted).

Entergy Arkansas asserts that APSC's orders inflicted immediate injury by establishing a precedent intended to control the APSC's rulings on future applications to pass-through FERC-ordered refunds.  Entergy Arkansas reports that cases are currently pending in which FERC is considering whether to order it to pay refunds to other Operating Companies that could total more than $500 million.

Whether Entergy Arkansas will be subject to pay FERC-ordered refunds to other

Operating Companies is an open question to be resolved by the federal agency empowered to make that decision. Additionally, as demonstrated by the tortuous history of the underlying proceedings, FERC's conclusions regarding its ability to order refunds under § 206(c) may change. According to Entergy Arkansas, "regardless of what . . . FERC or the District of Columbia Circuit hold, [APSC] maintain[s] that FERC does not have the authority to order such refunds, so they will not respect such orders and pass though those costs . . . . " *Id*. at 3. However, in its order denying Entergy Arkansas's motion for a rehearing, APSC noted that the D.C. Circuit has not ruled that APSC is preempted from denying the pass through of refund costs to ratepayers, and considering the evolving nature of the underlying proceedings, such a ruling is possible.[7]  Given the unsettled matters currently pending in the underlying FERC proceedings, the Court finds that APSC's orders denying Entergy Arkansas's previous application for a retail surcharge pose no immediate threat of injury to Entergy Arkansas.

Entergy Arkansas argues that it is suffering present business uncertainty sufficient to satisfy Article III.  However, Entergy Arkansas does not claim that its current state of uncertainty has negatively impacted its ability to conduct business or that it has caused a specific, concrete injury that would be redressed by the relief requested.  If mere business uncertainty were sufficient to constitute an injury-in-fact, "courts would soon be overwhelmed with requests for what would essentially would be advisory opinions." *National Park Hospitality Ass'n v. Department of Interior* 538 U.S. 803, 811, 123 S.Ct. 2026, 2032 (2003).

In sum, the Court finds that Entergy Arkansas has failed to demonstrate that it has

---

[7] Entergy Arkansas reports that regardless of the current FERC proceeding, the matter will be appealed to the Court of Appeals for the District of Columbia Circuit.  *See* docket entry #14, at 3 n.2.

sustained or is in immediate danger of sustaining an injury traceable to the APSC's orders denying its previous application for a retail surcharge. Because Entergy Arkansas lacks standing, the Court lacks subject matter jurisdiction. *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir.2002)("[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction.").

The Court further finds that the complaint for declaratory relief fails to meet the traditional justiciability requirement of ripeness.[8] Administrative agencies, such as FERC, are "entitled to a measure of comity sufficient to preclude disruptive injunctive relief by federal courts absent a showing that serious and irremediable harm will otherwise result." *Hastings v. Judicial Conference of the United States*, 770 F.2d 1093, 1102 (D.C. Cir. 1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3272 (1986)). Although Entergy Arkansas seeks to invalidate orders issued by ASPC, not FERC, the relief sought has the potential to disrupt or preempt FERC proceedings while those proceedings are ongoing. The ripeness doctrine--along with other judicial doctrines such as exhaustion and finality–is designed to prevent such disruption.

In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 104–05 (1977), the Supreme

---

[8]"The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Nebraska Public Power Dist. v. MidAmerican Energy Co.* 234 F.3d 1032, 1037 (8th Cir. 2000)(citing *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)).

Court stated the purpose of the ripeness doctrine in the context of interfering with an administrative process:

> [T]o prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

Two fundamental considerations guide the determination of whether a controversy is ripe for review: (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *See Abbot Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515. Factors relevant to the "fitness" consideration include, but are not limited to, whether the issue is purely legal, the finality of the challenged action, whether the claim involves contingent events that may not occur, and whether further factual development would be helpful. *See Nebraska Public Power Dist. v. MidAmerican Energy Co*., 234 F.3d 1032, 1038 (8th Cir. 2000). The "hardship" consideration inquires whether the plaintiff faces injury that is "'certainly impending.'" *South Dakota Min. Ass'n, Inc. v. Lawrence County,* 155 F.3d 1005, 1008 (8th Cir. 1998)(quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301 (1979)).

The Court finds that Entergy Arkansas's complaint for declaratory relief is unfit for judicial decision because it involves uncertain, contingent events that might not occur. The FERC-ordered refunds that prompted Entergy Arkansas apply for a retail surcharge were eliminated, and APSC's orders denying the application might not ever affect Entergy Arkansas in a concrete way. In FERC's August 13, 2010 order finding that § 206(c) does not bar refunds, the Commission noted that Entergy's position that payor Operating Companies would not be

able to recover refund costs at the retail level was "largely speculative." *See La. Pub. Serv. Comm'n v. Entergy Corp. v. F.E.R.C.,* 132 F.E.R.C. ¶ 61133 (2010). In a footnote, FERC observed that Entergy had reported, that it was "not clear whether or how much of" certain cost could be recovered by the payor Operating Companies, which had "deferred filings at the retail level pending the Commission's decision ." *Id*. at 61651 n.53. Accordingly, FERC made its findings under § 206(c) without precognition that APSC would deny Entergy Arkansas's application for a retail surcharge, and it is likely that the Commission will be made aware of APSC's orders in the course of the refund proceedings currently underway.

Entergy Arkansas maintains that his case presents a purely legal question:  "whether FERC's orders are preemptive so that FERC refunds must be passed though to retail rates." Docket entry #14, at 16.  However, this Court's opinion regarding the preemptive force of a non-existent FERC order mandating the payment of refunds would be an advisory opinion in contravention of Article III.  "A claim is not ripe for adjudication if it rests upon further events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257 (1998)(unanimous decision)(internal quotations and citations omitted).  Whether Entergy Arkansas will be charged with paying refunds is far from certain and, for reasons previously stated, the Court finds that Entergy Arkansas has failed to show that it faces a realistic danger of sustaining an immediate injury as a result of APSC's orders.

## IV.

For the reasons stated, Defendants' motion to dismiss (docket entry #4) is GRANTED, and Defendants' motion to hold further proceedings in abeyance (docket entry #4) is DENIED AS MOOT.  Pursuant to the judgment entered together with this order, this action is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED THIS 24TH DAY OF APRIL, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE